```
                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF OHIO
                           WESTERN DIVISION
```

AMERICAN PREMIER UNDERWRITERS, :
INC., et al.                   : NO. 1:08-CV-00346
                               :
        Plaintiffs,            :
                               : **OPINION AND ORDER**
    v.                         :
                               :
                               :
NATIONAL RAILROAD PASSENGER    :
CORPORATION,                   :
                               :
        Defendant.

This matter is before the Court on Defendant's Motion to Stay Proceedings Pending Arbitration by Defendant National Railroad Passenger Corporation (doc. 8), Defendant's Alternative Motion for Extension of Time to Respond to Complaint (doc. 9), Plaintiffs' Response in Opposition (doc. 15), Defendant's Reply in Support (doc. 12), Plaintiffs' Supplemental Memorandum in Opposition (doc. 23), and Defendant's Supplemental Memorandum in Support (doc. 24). Also before the Court is Plaintiffs' Motions to Aid and Preserve the Court's Jurisdiction (doc. 16) and to Expedite Briefing Schedule (doc. 17), Defendant's Response in Opposition (doc. 18), and Plaintiffs' Reply in Support (doc. 19). For the reasons stated herein, the Court GRANTS Defendant's Motion to Stay Proceedings Pending Arbitration (doc. 8), and DENIES AS MOOT Plaintiffs' Motions to Aid and Preserve the Court's Jurisdiction (doc. 16) and to Expedite Briefing Schedule (doc. 17), and Defendant's Alternative Motion for Extension of Time to Respond to Complaint

(doc. 9).

**I. Background**

In response to the failing passenger rail service industry, Congress enacted the Rail Passenger Service Act of 1970 ("RPSA"), Pub. L. No. 91-518, 84 Stat. 1327, which created the National Railroad Passenger Corporation, known as Amtrak (doc. 8). Amtrak was to be a private corporation designed to "meet the Nation's intercity passenger transportation requirements" (Id., quoting RPSA §301). The RPSA outlined a procedure by which railroads could choose to obtain relief from their passenger service obligations by entering into contracts with Amtrak (Id.). "In consideration of being relieved of this responsibility by [Amtrak]," a participating railroad would pay Amtrak an amount equal to half of that railroad's losses from intercity passenger service during 1969, and provide Amtrak with the use of tracks, facilities, and services. (Id., quoting RPSA §§ 401(a)(2), 402). A participating railroad could elect to receive either a tax deduction or common stock of Amtrak in an amount equal to its payment. (Id., citing RPSA §§ 401(a)(2), 901).

In June 1970, Plaintiff, a freight and passenger rail service company then known as Penn Central, filed for bankruptcy (doc. 8). Plaintiff chose to obtain relief from its passenger service obligations under the RPSA and entered into an agreement with Amtrak dated April 16, 1971 ("Basic Agreement") (Id.). Under the Agreement, Plaintiff was to contribute half of its 1969

passenger service losses, approximately $52 million, to Amtrak, and Amtrak would relieve Plaintiff of its responsibility for the provision of Intercity Rail Passenger Service (Id.). As provided by the RPSA, Plaintiff elected to take approximately five million shares of Amtrak common stock, and received a seat on Amtrak's board of directors in 1971 (Id.). Article Six of the Basic Agreement contains the following arbitration provision:

> Except as provided in Sections 2.3 [Avoidable Loss Payments], 5.1 [Costs and Accounts] and 7.3 [Labor Protection Costs], any claim or controversy between NRPC and Railroad concerning the interpretation, application, or implementation of this Agreement shall be submitted to binding arbitration in accordance to the provisions of the Arbitration Agreement dated the date hereof among NRPC, Railroad, and certain other railroads which have entered into agreements with NRPC providing for the acquisition or use by NRPC of equipment and facilities of such other railroads and for the furnishing of services to NRPC by such other railroads.

(Id.). The Arbitration Agreement, incorporated by the Basic Agreement, states in Sections 4.12 and 8.8 "[t]his Agreement shall become effective May 1, 1971...and shall remain in effect through and including April 30, 1996" (doc. 15).

In 1978, in connection with Plaintiffs' reorganization under the Bankruptcy Code, Plaintiffs and Defendant entered a Settlement Agreement which provides "[a]ll claims by Amtrak against Penn Central, and all claims by Penn Central against Amtrak, will be liquidated, extinguished and settled, as part of the consummation of a plan of Penn Central" (doc. 8). The Settlement

Agreement further provides that "all rights and obligations [between the parties] arising out of or based upon the agreements listed below are released, and Penn Central and Amtrak hereby agree never more to assert against each other any claim based on such rights or obligations" (Id.).

In 1997, Congress enacted the Amtrak Reform Act of 1997, Pub. L. No. 105-134, 111 Stat. 2570, and in section 415(b) provided "Amtrak shall, before October 1, 2002, redeem all common stock previously issued, for the fair market value of such stock." The parties have reached no agreement regarding the price of the stock (doc. 15).

On May 19, 2008, Plaintiffs filed a complaint alleging claims for (1) violations of the Takings Clause of the Fifth Amendment; (2) restitution; (3) conversion; (4) declaratory judgment; (5)(6) due process violations; and (7) violation of Section 415(b) (doc. 1). Thereafter, Defendant filed the instant motion arguing that Plaintiffs' claims require the "interpretation [and] application" of the Basic Agreement, and therefore Plaintiffs must arbitrate their claims as required by Article Six of the Basic Agreement (doc. 8).[1]

**II. Discussion**

---

[1] Plaintiffs have filed motions to Aid and Preserve the Court's Jurisdiction (doc. 16) and to Expedite Briefing Schedule (doc. 17). At a status conference held on September 17, 2008, the parties agreed to jointly request that the NAP hold arbitration proceedings in abeyance pending the resolution of Defendant's motion. Therefore, Plaintiffs' motions are moot and need not be considered by the Court.

Defendant contends that this matter should be arbitrated before the NAP as provided by the 1971 Basic Agreement (doc. 8). Defendant argues that Federal Arbitration Act ("FAA") mandates that when parties have agreed to arbitration, courts must stay a pending suit on the application of either party in favor of arbitration (Id., citing 9 U.S.C. § 3). Defendant quotes Nestle Waters N. Am., Inc. v. Bollman, 505 F.3d 498 (6th Cir. 2007), which states that under the FAA, the courts' inquiry is limited to determining whether "a valid agreement to arbitrate exists between the parties and...the specific dispute falls within the substantive scope of the agreement" (Id.). Defendant argues that a valid agreement to arbitrate exists as provided in Article Six of the 1971 Basic Agreement (Id.). The question of whether the Basic Agreement expired or was released in the 1978 Settlement Agreement, Defendant contends, is one suitably presented to and decided by the NAP (Id., citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.")). Further, Defendant argues, courts generally recognize the ability to compel arbitration of post-expiration disputes, particularly where one party is seeking to enforce alleged contractual promises (Id., citing Zucker v. After Six, Inc., 174 Fed. Apx. 944, 947 (6th Cir. 2006); International Paper Co. V. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000)).

Defendant quoted Fazio v. Lehman Bros, Inc. 340 F.3d 386, 395 (6th Cir. 2003), for the proposition that in deciding whether an issue is within the scope of an arbitration agreement, courts must "ask if an action could be maintained without reference to the contract or relationship issue" (Id.). All seven claims, Defendant contends, are based on Plaintiffs' theory that the Basic Agreement required Amtrak to operate so as to maximize value to the common shareholders and that Section 415(b) was intended to give shareholders the return that they were promised (Id.). Thus, Defendant argues, Plaintiffs' claims necessarily "concern the interpretation, application, or implementation" of the Basic Agreement and therefore cannot be maintained without reference thereto (Id., quoting Article Six of the Basic Agreement).

When a court finds an issue referable to arbitration under a written arbitration agreement, as Defendant argues is the case here, the court must, "on the application of any one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Therefore, Defendant avers, the Court must stay this matter pending arbitration (doc. 8).

In response, Plaintiffs argue that their claims for relief do not involve a breach of the 1971 Basic Agreement or its interpretation, and instead seek damages for Amtrak's violation of the Constitution and statutes of the United States and common law (doc. 15). Plaintiffs contend that Sixth Circuit precedent, which

requires that a party seeking to compel arbitration must establish that there exists a valid agreement to arbitrate and that the specific dispute falls within the scope of that agreement, dictates that the Court deny Defendant's motion (Id., citing Javitch v. First Union Sec. Inc., 315 F.3d 619, 624 (6th Cir. 2003); NCR v. Korala Assocaites Ltd., 512 F.3d 807, 814 (6th Cir. 2008)). First, Plaintiffs argue that no valid arbitration agreement exists between the parties because both the Basic Agreement and the seperate arbitration agreement that was incorporated into the Basic Agreement expired on April 30, 1996 (Id.). Second, on February 15, 1978, Defendant released "all rights and obligations...arising out of or based upon" the Basic Agreement, including the right to arbitrate, and therefore, argue Plaintiffs, there is no valid arbitration agreement (Id.). Finally, Plaintiffs contend that even assuming there is a valid arbitration clause, then it is clear Plaintiffs' claims do not fall within its scope because the claims can be resolved "without reference to the agreement containing the arbitration clause" (Id.).

In reply, Defendant argues that questions of expiration or release are reserved for arbitration (doc. 22, citing among others Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, Local Union No. 44 v. J&N Steel & Erection Co., 8 F. App'x 381 (6th Cir. 2001) ("[W]here the dispute turns not on whether the parties ever agreed to arbitrate, but rather whether an agreement to arbitrate has expired or terminated, the question of termination is

for the arbitrator.")). Further, Defendant reviews each of Plaintiffs' claims and contends that none can be maintained without reference to the Basic Agreement and the parties' contractual relationship (doc. 22). Defendant avers that all of Plaintiffs' claims seek recovery on Plaintiffs' payment to Defendant under the Basic Agreement, arguing "[i]ndeed, the claims ostensibly based on the Constitution or on the 1997 legislation concerning redemption of Amtrak common stock are expressly tied to the Basic Agreement because they explicitly seek to undo its central transaction" (doc. 24).

Having reviewed this matter, the Court finds Defendant's position well-taken. As both parties acknowledge, "[b]efore compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists and that the specific dispute falls within the substantive scope of the agreement." Javitch, 315 F.3d 619, 624 (6th Cir. 2003). It is clear that both parties agreed to arbitration under the 1971 Basic Agreement. Plaintiffs' contention that the arbitration clause in the Basic Agreement is no longer effective due to expiration and release is not question for this Court to consider. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006); J&N Steel & Erection Co. 8 F. App'x at 386; United Steel Workers of Am. v. Coqnis Corp., 2007 U.S. Dist. LEXIS 31976, at *9-10 (S.D. Ohio May 1, 2007) (Dlott, J.) ("questions of expiration or termination are

left to the arbitrator"). A court may not decide whether an arbitration clause has expired or terminated, because "resolution of the issue involves examining and interpreting the termination provisions of the agreement." J & N Steel, 8 Fed. App'x at 386.

Therefore, the Court must only determine whether the Basic Agreement covers this particular dispute by examining the scope of the arbitration clause. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 586 (1960). Article Six of the Basic Agreement states that it covers disputes "concerning the interpretation, application, or implementation of this Agreement" (doc. 8). Courts have previously characterized this provision as broad in scope. See, National R.R. Passenger Corp. v. Consolidated Rail Corp. 892 F.2d 1066, (D.C. Cir. 1990); National R.R. Passenger Corp. v. Boston & Maine Corp., 850 F.2d 756, 760 (D.C. Cir. 1988). Reviewing the Complaint in light of the arbitration provision, the Court finds that Plaintiffs' Complaint cannot be maintained without reference to the Basic Agreement and the parties' contractual relationship. "A party cannot avoid arbitration simply by renaming its claims so they appear facially outside the scope of the arbitration agreement." Simon v. Pfizer, Inc. 398 F.3d 765, 775 (6th Cir. 2005). Each of Plaintiffs' seven claims necessarily involve the exchange of $52 million for stock and other consideration, matters governed by the Basic Agreement. Therefore, the Court finds that Defendant has shown that this dispute is arbitrable, and thus finds it proper to stay these

proceedings pending arbitration. 9 U.S.C. § 3.

**III. Conclusion**

For the foregoing reasons, the Court GRANTS Defendant's Motion to Stay Proceedings Pending Arbitration (doc. 8), and DENIES AS MOOT Plaintiffs' Motions to Aid and Preserve the Court's Jurisdiction (doc. 16) and to Expedite Briefing Schedule (doc. 17), and Defendant's Alternative Motion for Extension of Time to Respond to Complaint (doc. 9).

SO ORDERED.


Dated: December 3, 2008          /s/ S. Arthur Spiegel
                                 S. Arthur Spiegel
                                 United States Senior District Judge