```
              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION
```

AMERICAN PREMIER UNDERWRITERS, :
INC., et al.                   : NO. 1:08-CV-00346
                               :
     Plaintiffs,               :
                               : **OPINION & ORDER**
  v.                           :
                               :
                               :
NATIONAL RAILROAD PASSENGER    :
CORPORATION,                   :
                               :
     Defendant.                :
                               :

Pending before the Court are Plaintiffs' Motion to Vacate Stay and Restore Action to Active Docket (doc. 34), Defendant's Memorandum in Opposition thereto (doc. 38), Plaintiffs' Reply in support thereof (doc. 43), Defendant's Motion to Confirm Arbitration Award (doc. 44), Plaintiffs' Memorandum in Opposition thereto (doc. 47), and Defendant's Reply in support thereof (doc. 48). For the following reasons, the Court GRANTS Defendant's Motion to Confirm Arbitration Award inasmuch as the majority of the panel found that the dispute was not arbitrable because the agreement to arbitrate had expired and/or been released.

**I.    Background**

The underlying issues in this matter involve a $52 million payment that Plaintiff American Premier Underwriter's predecessor entity, Penn Central Transportation Company, made in 1971 to Defendant National Railroad Passenger Corporation

("Amtrak") in exchange for Amtrak common stock and relief from the responsibility to provide intercity rail passenger service. The 1971 agreement memorializing this transaction is known as the "Basic Agreement." The Basic Agreement contained an arbitration provision, which, <u>inter alia</u>, provided that "any claim or controversy between [the parties] concerning the interpretation, application, or implementation of this Agreement shall be submitted to binding arbitration in accordance to the provisions of the Arbitration Agreement dated the date hereof...." The Arbitration Agreement provided that it would become effective on May 1, 1971 and would remain in effect through and including April 30, 1996.

In 1978, in connection with Plaintiffs' reorganization under the Bankruptcy Code, Plaintiffs and Amtrak entered a Settlement Agreement which provided that "[a]ll claims by Amtrak against Penn Central, and all claims by Penn Central against Amtrak, will be liquidated, extinguished and settled, as part of the consummation of a plan of Penn Central" (doc. 8). The Settlement Agreement further provided that "all rights and obligations [between the parties] arising out of or based upon the agreements listed below are released, and Penn Central and Amtrak hereby agree never more to assert against each other any claim based on such rights or obligations" (<u>Id</u>.).

In 1997, Congress enacted the Amtrak Reform Act of 1997, Pub. L. No. 105-134, 111 Stat. 2570, and in section 415(b) provided

that "Amtrak shall, before October 1, 2002, redeem all common stock previously issued, for the fair market value of such stock." The parties have reached no agreement regarding the price of the stock (doc. 15).

On May 19, 2008, Plaintiffs filed a complaint alleging claims for violations of the Takings Clause of the Fifth Amendment; restitution; conversion; declaratory judgment; due process violations; and violation of Section 415(b) of the Amtrak Reform Act of 1997 (doc. 1).  On December 3, 2008, the Court granted Amtrak's Motion to Stay Proceedings Pending Arbitration, finding that the issue of expiration and release of the agreement to arbitrate was within the scope of the Basic Agreement, which agreement contained an arbitration clause and incorporated an "Arbitration Agreement" between the parties and that questions about the expiration of the agreement to arbitrate should be decided by arbitrators, not the Court (doc. 25).

The case proceeded to arbitration before the National Arbitration Panel ("NAP"), which received briefs and heard oral argument on Amtrak's motion to dismiss Plaintiffs' claims and Plaintiffs' motion to dismiss the arbitration for lack of jurisdiction (doc. 34).  In a Decision and Order entered on December 21, 2009, a majority of the NAP granted Plaintiffs' motion to dismiss on the ground that the agreement to arbitrate had expired and the presumption of arbitrability of post-termination

disputes was expressly negated by the termination and release of the duty and/or obligation to arbitrate between the parties by virtue of the provisions of the Basic Agreement, the Arbitration Agreement, and the Settlement Agreement.

Pursuant to the decision of the NAP, Plaintiffs moved the Court to vacate the stay and reopen the case before the Court (doc. 34). Amtrak does not oppose reopening the case, provided that the arbitration award is confirmed in accordance with Section 9 of the Federal Arbitration Act ("FAA")(doc. 38). Indeed, Amtrak contends that the Court must either confirm the award or, if the Court believes that the NAP exceeded its authority in deciding that the presumption of arbitrability had been overcome, vacate the award, continue the stay and remand the case to the NAP for a decision on the merits (Id., citing 9 U.S.C. §10).

**II.     Discussion & Conclusion**

In December 2008, the Court stayed this matter and sent it to the arbitration panel for the panel to decide whether the dispute should be arbitrated given that the agreements providing for arbitration appeared to have expired. The majority of the panel decided that they had no jurisdiction to arbitrate the underlying dispute because the agreements providing for arbitration had indeed expired, and the presumption of arbitrability of post-termination disputes was expressly negated. Thus, the matter is back before the Court.

As an initial matter, the Court notes that Amtrak has interpreted the Court's earlier rulings as having held that Plaintiffs' substantive claims are arbitrable. This interpretation stretches the Court's holdings beyond their intended limit. To clarify, when the Court stated that "this dispute is arbitrable," it was, as the NAP noted, in the context of the Court's decision regarding the question of whether the issues of expiration of the agreement to arbitrate and release of that agreement were arbitrable. The Court decided only that questions of expiration and release should be decided in the first instance by the NAP not by the Court.

While, on reconsideration, the Court did state that Plaintiffs' claims were presumptively arbitrable even if the agreement to arbitrate had expired and/or been released, that, again as the NAP noted, was merely a restatement of the holding of Nolde Bros., Inc. v. Bakery & Confectionery Workers Union, 430 U.S. 243 (1977). The Court did not decide whether that presumption had been overcome and certainly did not hold that the NAP must arbitrate even if they found that the expiration of the agreements left them without jurisdiction. Indeed, Nolde does not require that having once agreed to arbitration parties must always and forever submit to arbitration. When the dispute is over a provision of the expired agreement, Nolde holds that a presumption of arbitrability obtains, but that presumption can be overcome

either expressly or by clear implication.  430 U.S. at 255.  The NAP found that the parties had clearly implied that their desire to arbitrate disputes did not extend to post-expiration/post-release disputes, and the Court agrees.

Plaintiffs argue that the Court should not confirm the NAP's award because no arbitration occurred since the NAP decided it lacked jurisdiction to arbitrate, and the Court has no jurisdiction under the FAA to confirm the award because no valid, written agreement to arbitrate exists (doc. 47).  While it is true that the Court sent this case to the NAP to, as Plaintiffs contend, "decide the threshold jurisdictional question of whether or not there was a valid agreement to arbitrate," this does not mean that the decision on that threshold question is not a decision susceptible to confirmation by this Court.  This matter was sent to the NAP so the panel could decide–through its arbitration processes–the dispute regarding whether the agreement to arbitrate had expired and/or been released.  The NAP, through its arbitration processes, did just that.  The Court is wholly unpersuaded by Plaintiffs' position that arbitration didn't happen simply because the NAP did not decide the underlying issues.  As Amtrak notes, Plaintiffs cite to no case to support this position and instead assert that it is a matter of logic and common sense.  The Court sees it instead as a matter of strained word play.  Whatever else "arbitration" encompasses, the Court holds that it at least

encompasses a panel's decision resolving questions of expiration and release. To hold otherwise would, as Amtrak notes, be contrary to the decisions of other courts that have confirmed such awards and would be contrary to the policy rationale undergirding the FAA. See, e.g., Galt v. Libbey-Owens-Ford Glass Co., 397 F.2d 439, 442-43 (7th Cir. 1968)(confirming determination that arbitrators lacked jurisdiction as to certain questions); Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 588 (2008)(policy reasons support confirmation).

The Court is similarly unmoved by Plaintiffs' argument that no valid, written agreement exists so the Court has no jurisdiction to confirm the award. Plaintiffs cite to 9 U.S.C. § 2 for support for their position. Section 2 of Title 9 reads in relevant part, "A written provision in any...contract...to settle by arbitration a controversy thereafter arising out of such contract...or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract...shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." This section of the code simply mandates that district courts direct parties to proceed to arbitration on issues about which an agreement to arbitrate has been signed. It is a "declaration of a liberal federal policy favoring arbitration agreements" and is meant to "foreclose state legislative attempts to undercut the

enforceability of arbitration agreements." Perry v. Thomas, 482 U.S. 483, 489 (1987).

Section 2 simply does not speak to the situation present here. Plaintiffs do not argue that the agreement to arbitrate was fraudulently induced or that they were not signatories to the Basic Agreement and the Arbitration Agreement, which could be grounds for revoking the agreement, as recognized by Section 2. Instead, Plaintiffs appear to argue that the expiration and/or release of the agreement somehow has the effect of revoking the agreement. The Court finds no merit in this argument. A valid, written agreement to arbitrate indisputably did exist. The NAP found that the parties' written agreement had expired and/or been released, but that does not erase the existence of that written agreement; it simply means that agreement no longer dictates the parties' options with respect to disputes. Under Plaintiffs' logic, Nolde and the myriad other cases addressing post-termination arbitration would be meaningless for how could a court discuss post-termination arbitration or recognize a presumption of post-termination arbitrability if the termination of the agreement rendered the agreement invalid and thus divested the court of jurisdiction under the FAA? The Court has no problem finding that it has jurisdiction under the FAA to confirm the NAP's award.

However, in an effort to avoid any further confusion, the Court desires to make clear the scope of its decision and its

understanding of the posture of this case going forward. The Court's statement in its earlier order staying the matter pending arbitration that Plaintiffs' claims cannot be made without reference to the Basic Agreement was not a decision by this Court that Plaintiffs' claims are actually contractual claims and not, as purported, statutory or constitutional claims. Indeed, to the extent the panel's decision can in any way be read to mean that the NAP or this Court made a determination that Plaintiffs' claims are masked contractual claims or are not otherwise legitimately constitutional and statutory claims, the Court emphasizes that this Order confirming the NAP's decision does not subscribe to such a reading. In short, the Court confirms the NAP's decision only to the extent that the NAP decided that it has no jurisdiction to arbitrate this matter, and, to the extent the <u>Nolde</u> presumption was applicable, it was negated. Whether Plaintiffs' claims are actually contractual in nature and not constitutional or statutory, and, for example, whether the Settlement Agreement effectively precludes Plaintiffs' claims, go to the merits of this case and will be decided by the Court as the case progresses. And it is high time this case progress. At the hearing on these motions, both parties stated their desire to move towards the resolution of this case on the merits, and the Court welcomes such a move.

Plaintiffs' Motion to Vacate Stay and Restore Action to Active Docket (doc. 34) is DENIED, and Defendant's Motion to

Confirm Arbitration Award (doc. 44) is GRANTED as provided herein. The Court SETS a scheduling conference for January 25, 2011, at 11:00 A.M., at which the Court will set a timeline for discovery, dispositive motions and trial in this matter.

       SO ORDERED.

Dated: November 16, 2010    /s/ S. Arthur Spiegel
                                     S. Arthur Spiegel
                                     United States Senior District Judge