UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

American Premier Underwriters, Inc., et. al.,   :   Case No. 1:08-cv-346
                                                :
      Plaintiffs,                              :
                                                :
vs.                                             :
                                                :
National Railroad Passenger Corporation,        :
                                                :
      Defendant.                               :

## ORDER

Before the Court is Defendant's motion to dismiss Count IV of Plaintiffs'

complaint.  (Doc. 81)  Plaintiffs oppose the motion (Doc. 90), and Defendant has filed a

reply.  (Doc. 92)  Defendant's motion contends that Count IV, the only claim remaining

for resolution in this case, should be dismissed because it is time-barred.  Plaintiffs

disagree, arguing that the accrual date of their claim cannot be determined as a matter

of law under Rule 12.  The issue is fully briefed and ready for decision.

For the following reasons, the Court will grant Defendant's motion.

## FACTUAL BACKGROUND

Plaintiffs, American Premier Underwriters, Inc. and American Financial Group

(collectively "APU"), filed their complaint in this case on May 19, 2008 against the

National Railroad Passenger Corporation ("Amtrak").  The complaint alleges seven

claims that all generally arose from Amtrak's refusal to redeem, at fair market value, the

common stock Amtrak issued to APU's predecessor in the early 1970's, pursuant to the

Rail Passenger Service Act of 1970 ("RSPA").  That statute allowed financially troubled

passenger railroads (such as Penn Central, APU's predecessor) to stop providing

intercity rail service if they entered into a contract with Amtrak, which would continue to provide the rail service.  The statute included a provision allowing the railroad to pay Amtrak, and in return to receive Amtrak common stock (one share for every $10 paid by the railroad).  APU paid $52 million to Amtrak and received a commensurate number of Amtrak shares.  In 1997, Congress passed the Amtrak Reform and Accountability Act ("ARAA").  Section 415(b) of that statute was entitled "Redemption of Common Stock," and provided: "Amtrak shall, before October 1, 2002, redeem all common stock previously issued, for the fair market value of such stock."

APU's complaint is premised on Amtrak's alleged refusal to redeem APU's shares at "fair market value," as the statute requires.  Amtrak initially sought a stay of this case pending arbitration, which the court granted.  (Doc. 25)  When the stay was lifted, Amtrak moved to dismiss the complaint, raising a number of defenses and contentions.  (Doc. 58)  After extensive briefing, the court granted Amtrak's motion to dismiss.  (See Doc. 67, Judge S. Arthur Spiegel's Opinion and Order of June 22, 2011.)[1]

APU appealed the dismissal of its complaint to the Sixth Circuit, which largely affirmed Judge Spiegel's findings and conclusions.  American Premier Underwriters, Inc. v. National Railroad Passenger Corp., 709 F.3d 584 (6th Cir. 2013).  The court of appeals affirmed the dismissal of APU's state law claims, as well as its constitutional takings, procedural, and substantive due process claims, all of which sought monetary damages from Amtrak.  The court held that Amtrak is "... a federal agency [that] cannot

_____

[1] This case was recently transferred to the undersigned following Judge Spiegel's death in December 2014.

be sued under an implied cause of action for monetary damages that stem from the agency's constitutional violations.  *FDIC v. Meyer*, 510 U.S. 471, 486 (1994)."  Id. at 587-588.  The court also affirmed the dismissal of APU's statutory claim under ARAA, and concluded that Section 415(b) did not create a private right of action.

The Sixth Circuit reversed the district court's dismissal of APU's fourth claim for relief, a procedural due process claim seeking equitable and declaratory relief.  APU's equitable claim alleged that Amtrak engaged in an "irrational" valuation of its stock, thereby depriving it of its property interest in the fair market value of those shares. The appeals court found that Section 415(b) created a protected property interest:  "Section 415(b) clearly limits the government's discretion and thereby creates a protected property interest.  The provision contains a deadline, October 1, 2002, and the requirement that redemption be for 'fair market value.'  Although the latter requirement is not as precise as the deadline, it can be objectively substantiated and determined to either be met or not met. ... As the holder of a protected property interest, APU is entitled to some degree of process before being deprived of its interest."  Id. at 595.  The Sixth Circuit then stated:

> We do not address whether the statute of limitations should bar APU's due process claim (the only remaining claim). The district court addressed this issue in a single paragraph, stating that "Plaintiffs' claims are not time-barred, inasmuch as they relate to the question of the value of the shares ...". There was no need to do a thorough analysis on each claim, or even reach the issue at all, since the district court had dismissed all the claims on alternate grounds.  Now that we have narrowed the field to a single remaining claim and the statute of limitations question may be dispositive, we leave it to the district court to perform, in the first instance, a thorough analysis of whether APU's due process claim is, on its face, time-barred.

Id.

After the court of appeals issued its mandate, Amtrak filed its pending motion to dismiss, arguing that APU's due process claim was time-barred on the face of the complaint.  The motion argues that APU's claim is based on its allegation that Amtrak's valuation process violated its due process rights.  Amtrak performed one valuation, and valued the stock at 3 cents per share.  That value was conveyed to APU in 2000 (Compl. ¶¶ 9, 43), and APU rejected it in a letter dated November 2, 2000.  (Compl. ¶44)  Amtrak argues that APU's own factual allegations establish that it knew of its due process injury in 2000, when Amtrak valued the stock and offered to redeem APU's shares, an offer APU alleges is "de minimis" and not the result of a "rational, fact-based and neutral" process.  (Id. at ¶¶ 44, 77)  Amtrak also cites APU's allegation that "because Amtrak and APU could not agree on fair market value within the time fixed by [ARAA], Amtrak should have commenced eminent domain proceedings pursuant to RPSA.  As such, APU further requests that this Court conduct those eminent domain proceedings as if initiated in this Court by Amtrak in the first instance ...".  (Compl. ¶78) APU's own complaint concedes that Amtrak should have acted by the "time fixed" by ARAA, October 1, 2002.  Yet APU waited eight years after that date, with knowledge of Amtrak's valuation, to file this lawsuit.

APU also concedes that after it learned of and rejected Amtrak's valuation, it engaged in negotiations with Amtrak's high-level officials, negotiations which continued through 2008.  Amtrak contends that this admission also establishes APU's knowledge of its injury, as it no doubt precipitated the negotiations.  If APU wanted to extend the

statute of limitations during these negotiations, APU should have secured a tolling agreement.  Simply engaging in settlement discussions is not sufficient to toll a limitations period.  Amtrak cites Doe v. Blue Cross & Blue Shield United, 112 F.3d 869, 875 (7th Cir. 1997), noting that if plaintiff "... wanted a suspension of the limitations period during settlement negotiations he had only to ask the defendants to make a tolling agreement with him.  Otherwise the time in which to sue would and did keep running."  Amtrak also contends that APU's arguments about when the stock became worthless are irrelevant to the only remaining equitable due process claim, which is premised entirely on the process by which Amtrak valued the stock.

Finally, Amtrak argues that even if APU's claim did not accrue in November 2000, it unquestionably accrued on October 1, 2002.  That was the deadline established by Congress in Section 415(b) for Amtrak to redeem APU's stock at fair market value. When that deadline passed without what APU alleges was a rational valuation process that satisfied its due process rights, APU's constitutional claim accrued.  Amtrak cites Center for Biological Diversity v. Hamilton, 453 F.3d 1331, 1335 (11th Cir. 2006), which held that when a statute creates a fixed deadline for agency action, a claim accrues on the day after that deadline passes without action by that agency.

APU does not dispute that the applicable statute of limitations is that contained in D.C. Code 12-301(2), governing actions for recovery of personal property, or Section 12-301(8), a catch-all clause for actions not otherwise specified in the Code.  See, e.g., Bame v. Clark, 466 F.Supp.2d 105, 108 (D.D.C. 2006) (Section 12-301(8) applies to Bivens constitutional claims).  Both Section 12-301(2) and 12-301(8) provide for a three-year limitations period, which begins to run from the date the action accrues.

APU contends that the Court must consider its entire complaint and all of its allegations in determining whether a genuine factual dispute exists about the accrual date of its claim. APU cites its allegations that between 2000 and January 2008, the parties

> ... held numerous meetings and discussions concerning redemption of the common stock. ... Amtrak's initial offer to APU in 2000 valued APU's 5,238,511 shares at the ridiculously low and arbitrary and capricious price of 3 cents per share. APU and the other common shareholders rejected this offer. As they were bound to do by the [1997 statute], Amtrak and APU continued to negotiate in good faith over an amount that was just, fair and that passed constitutional muster. Indeed, in November 2007, Amtrak agreed to execute a Confidentially Agreement [sic] with APU to facilitate further and expanded negotiations over redemption of the shares.

(Doc. 1, ¶9) APU also cites its allegations that the parties discussed a deal involving other Amtrak assets that might yield sufficient income or asset appreciation to allow Amtrak to pay a "fair" redemption price: "In January 2008, however, Amtrak made it clear to APU that it was not interested in continuing to discuss such a transaction. Amtrak made it clear at this time that such a transaction could not be used to arrive at a redemption price above Amtrak's valuation of the stock as essentially worthless." (Id. at ¶10)

APU also alleges that from 1971, when APU's predecessor received shares of stock in exchange for payment of over $52 million to the newly-established Amtrak, through 2008, Amtrak's actions and conduct in managing the rail company eroded the value of APU's stock, a decline that was "gradual and continuous." (Id. at ¶32) In January 2008, this "gradual and continuous erosion" in share value "stabilized to the point that a claim arose" when Amtrak ended negotiations for redemption value, and told APU that "it saw no basis for transcending its view that APU shares were essentially worthless." (Id. at ¶¶36-37) The 1997 Reform Act led APU to believe that

-6-

this "value erosion" might stop or even be reversed.  Nevertheless, in 2000, Amtrak offered 3 cents per share, an offer APU alleges lacked adequate analysis and support, and was far below fair market value.  (Id. at ¶¶42-43)

APU argues that its complaint as a whole shows that its due process claim accrued in January 2008, when Amtrak terminated negotiations and reiterated its previous valuation of the stock as essentially worthless.  At the least, APU argues that there are genuine material factual disputes about the accrual date that prevent dismissal of its complaint at the pleading stage.

**DISCUSSION**

Standard of Review

In reviewing a motion under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations.  A claim will survive if those allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir. 2008), citing Bell Atlantic Corp. v. Twombly, 550 U.S.544 (2007).  Twombly essentially retired Rule 8's permissive "no-set-of-facts" pleading standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The Twombly court found that the continued literal application of that standard would impermissibly allow wholly conclusory claims to survive Rule 12 challenges.

And in Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that a complaint will survive a Rule 12 challenge only if its well-pleaded factual allegations are sufficient to state a claim for relief that is plausible on its face.  Facial plausibility requires pleading facts that permit a reasonable inference that the defendant is liable for

the alleged misconduct.  If a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. at 678 (quoting Twombly, 550 U.S. at 557).

Accrual of APU's Claim

Accrual of a constitutional claim is an issue of federal law.  Wallace v. Kato, 549 U.S. 384, 388 (2007); Trzebuckowski v. City of Cleveland, 319 F.3d 853 (6th Cir. 2003).  A claim accrues when a plaintiff "has a complete and present cause of action [and] can file suit and obtain relief...".  Wallace, 549 U.S. at 388 (internal citations and quotations omitted).  The Sixth Circuit has stated that a claim accrues when the plaintiff "... knows or has reason to know of the injury which is the basis of his action. ... In determining when the cause of action accrues in Section 1983 cases, we look to the event that should have alerted the typical lay person to protect his or her rights."  Trzebuckowski, 319 F.3d at 856 (internal citations omitted).

In that case, plaintiff brought an equal protection claim challenging the City's selective enforcement of a local ordinance regulating billiard rooms.  The City had filed criminal charges against the plaintiff, alleging he violated that ordinance; after the criminal case was finally resolved in his favor, plaintiff filed his complaint.  The Sixth Circuit held that his claim accrued when the state trial court initially dismissed the criminal charges against him and held that the ordinance was unconstitutional.  The City's successful appeal to the Ohio court of appeals, and the eventual reinstatement of the trial court's decision by the Ohio Supreme Court, did not affect or extend that accrual date.  The trial court's dismissal of the criminal charges placed plaintiff on notice of his injury, and "should have alerted him" to protect his constitutional rights.

-8-

Here, the Court need not decide if APU's due process claim accrued when Amtrak first conveyed its valuation and redemption offer, or when APU rejected it in November 2000.  It is clear to the Court that, on the face of APU's complaint, the due process claim accrued no later than October 1, 2002.  That date was the mandated statutory deadline by which Amtrak was required to redeem APU's stock at fair market value.  By that date, APU knew that (1) Amtrak valued its stock at 3 cents per share; (2) APU believed that de minimis value was irrational; (3) Amtrak did not perform another valuation before the statutory deadline; and (4) Amtrak had not instituted eminent domain proceedings regarding APU's stock.

In Center for Biological Diversity v. Hamilton, 453 F.3d 1331 (11th Cir. 2006), cited in Amtrak's motion, plaintiffs alleged that the Secretary of the Interior failed to designate critical habitat for two previously designated endangered species, which is a nondiscretionary duty under the Endangered Species Act.  The statute of limitations for suits against the United States, 28 U.S.C.§ 2401(a), includes a general six-year period which applied to the case, and which is jurisdictional and must be strictly construed.  Id. at 1334.  Plaintiffs filed suit more than six years after the statutory deadline for critical habitat designation had passed.  The Eleventh Circuit noted that the statutory language "... 'not later than' creates not an ongoing duty but a fixed point in time at which the violation for the failure of the Secretary to act arises." Id. at 1335.  The suit was therefore untimely, "[b]ecause a reasonably prudent plaintiff would have been aware of the failure of the Secretary to act on the day following the deadline ...". Id.

Section 415(b) of the ARAA contains very similar language to the section of the Endangered Species Act that was at issue in that case.  The ESA requires the

-9-

Secretary of the Interior to designate critical habitat within one year of issuing a proposed rule listing an endangered specie, and may extend that one-year period "... by not more than one additional year, **but not later** than the close of such additional year **the Secretary must publish** a final regulation" designating the habitat.  (See 16 U.S.C. §1533(b)(6)(C)(ii), as quoted in <u>Hamilton</u>, 453 F.3d at 1334; emphasis added.)  The ARAA specifically provided that Amtrak "**shall**, **before** October 1, 2002," redeem at fair market value the common stock previously issued to APU.  That is a fixed point in time at which APU knew or should have known of Amtrak's failure to act.  This conclusion is supported by the Sixth Circuit's opinion in this case.  In deciding whether Section 415(b) contained an implied private right of action, the court held:

> Section 415(b) clearly limits the government's discretion and thereby creates a protected property interest.  The provision contains a **deadline**, October 1, 2002, and the **requirement** that redemption be for 'fair market value.'  Although the latter requirement is not as precise as the deadline, it can be objectively substantiated and determined to either be met or not met.

<u>APU v. Amtrak</u>, 709 F.3d at 595 (emphasis added).  When a statute imposes a deadline for agency action, the agency's failure to act when that deadline arrives is clear.  It is the event that should have alerted APU to the need to protect its right to due process.

This conclusion is supported by <u>Nasierowski Bros. Inv. Co. v. Sterling Heights</u>, 949 F.2d 890 (6th Cir. 1991), a procedural due process claim based upon a city's change in zoning without a public hearing.  The district court held that plaintiff's claim was not ripe because he had not exhausted state zoning appeal remedies.  The Sixth Circuit reversed, noting that he did not allege a takings claim, but asserted a deprivation

of procedural due process when he was not given a public hearing to challenge the zoning reclassification.  The Sixth Circuit held that in a procedural due process claim, "the allegedly infirm process is an injury in itself," and the claim "is instantly cognizable in federal court without requiring a final decision on a proposed development from the responsible municipal agency."  Id. at 894.

The same principle is illustrated outside of a constitutional context in Crossman v. Asset Acceptance, 2014 U.S. Dist. LEXIS 79529 (M.D. Fla., June 14, 2014).   The district court addressed the accrual of a Fair Debt Collections Practices Act claim based on a debt collector's failure to file a satisfaction of judgment.  A Florida statute required the satisfaction to be filed within 60 days of receipt of the full payment of a debt.  Plaintiff fully paid an agreed judgment, then several years later he discovered that the satisfaction had not been filed.  He filed an FDCPA claim against the debt collection agency, which argued the claim was untimely under 15 U.S.C. §1692k(d), requiring FDCPA claims to be brought "within one year from the date on which the violation occurs."  The district court found that the violation occurred, and plaintiff's claim accrued, 60 days after plaintiff satisfied the judgment.  The state statute required the act (filing the satisfaction) and specified the deadline for that action (60 days after satisfaction).  The "violation" occurred when the debt collector failed to comply with that statutory deadline.

The same result applies here: Amtrak's due process violation occurred when the ARAA deadline arrived and Amtrak allegedly failed to properly value and redeem APU's stock.  APU contends that despite Amtrak's unequivocal offer of 3 cents per share in 2000, and APU's unequivocal rejection of that offer, Amtrak did not clearly and

unambiguously fail to afford APU due process until January 2008, when Amtrak broke off their negotiations.  To accept that contention would be tantamount to concluding that a statute begins to run "only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief."  Wallace v. Kato, 549 U.S. at 391.  And such a result contravenes the basic purpose of a limitations period.

This principle is also illustrated by Cooey v. Strickland, 479 F.3d 412 (6th Cir. 2007), a death-row prisoner's Section 1983 claim challenging Ohio's lethal injection procedure.  Plaintiff argued, and the district court agreed, that his claim accrued only at the point that his execution became "imminent."  The Sixth Circuit disagreed, concluding that his claim accrued when his direct appeal was final, or when state adopted lethal injection as its sole method of execution, whichever was later.  The later event (adoption of sole execution method) occurred in 2001, and so Cooey's 2004 lawsuit was untimely. The court rejected Cooey's argument that the "fluid nature of Ohio's execution protocol requires imminency of execution to be a key factor in the accrual calculus ...".  Id. at 423.  Here, APU's reliance on the ongoing or "fluid nature" of the negotiations between APU and Amtrak cannot control the accrual of APU's due process claim, in view of the statutory deadline and APU's admitted awareness of Amtrak's valuation.

APU cites De Csepel v. Republic of Hungary, 714 F.3d 591 (D.C. Cir. 2013), a claim for the return of art that was looted during World War II, and was in the possession of the Hungarian government in a museum in Hungary.  Plaintiffs alleged that Hungary had agreed to return the art but in 2008, repudiated its agreement and refused to do so.  Hungary claimed the lawsuit was time-barred under the same three-

year District of Columbia statute of limitations that is at issue in this case.  The court of appeals concluded that there were factual disputes over when plaintiffs' claim actually accrued, given the lengthy history of the parties' disputes over the artwork, and various family members' claims that were previously brought against Hungary in Hungarian courts.  This Court finds <u>De Csepel</u> inapposite here, particularly because the plaintiffs had alleged a breach of a bailment contract.  The court of appeals noted that such a claim accrues "when the plaintiff demands the return of the property and the defendant refuses, or when the defendant takes some action that a reasonable person would understand to be either an act of conversion or inconsistent with a bailment. ...  In order to trigger the statute of limitations, a defendant's refusal to return the property must be absolute and unconditional."  <u>Id</u>. at 603 (internal citations and quotation marks omitted).

Here, in contrast, APU's remaining claim is one for deprivation of procedural due process.  As the cases discussed above clearly demonstrate, a due process claim accrues when process is denied.  APU does not dispute that Amtrak's valuation of its shares occurred in 2000, APU rejected that valuation in 2000, and the Congressionally mandated deadline of October 1, 2002 passed without Amtrak conducting a valuation process that APU believed was constitutionally adequate.  Engaging in negotiations or settlement discussions about other resolutions of the dispute are not enough to toll the limitations period.  APU does not suggest that Amtrak engaged in any fraudulent conduct that lulled it into believing that it need not protect its rights, nor that equitable tolling might apply.

APU essentially argues that because its complaint suggests several different accrual dates, that is enough to establish a genuine factual dispute about which one is

correct.  The Court disagrees.  Based on APU's own allegations, and the authorities discussed above, APU was on notice of its due process injury - Amtrak's failure to conduct a fair market value appraisal that satisfied due process - by October 1, 2002. Its complaint, filed in May 2008, is untimely.  The Court therefore grants Amtrak's motion to dismiss.

## CONCLUSION

For all of the foregoing reasons, Amtrak's motion to dismiss (Doc. 81) is granted. APU's complaint is dismissed with prejudice.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: February 23, 2015                                s/Sandra S. Beckwith
                                                                      Sandra S. Beckwith, Senior Judge
                                                                      United States District Court